2 U.S. 199 (____)
2 Dall. 199
BARNES'S Lessee,
versus
IRWIN, et al.
Supreme Court of United States.

*200 The case was argued on the 19th of January, 1792, by Bankson and Rawle for the plaintiff, and Wilcocks and Serjeant for the defendants.
THE COURT then desired the following points might be further considered.
*201 1st. How far the case of Rippin v. Dawdin, is shaken by Hodsdon v. Lloyd. 2 Brown. Ch. Ca. 544.
2d. How far the difference between a devise to children as in Rippin v. Dawdin, and a devise to Nephews, &c. as in this case, may operate 1 Cha. Ca. 247. 2 Br. Ch. 380.
3d. Whether these articles can operate as a covenant to stand seized to uses. 1 Co. Rep. 175. Powell or Powers 210.
4th. Whether the articles are to be considered as executory. 7 Mod. 147.
5th. Whether the bare consent of the husband, anterior to the marriage, can give the wife a power.
But, in January 1793, THE COURT informed the counsel, that upon consideration, they had removed their own doubts; and did not, therefore, desire a further argument. They then proceeded to deliver their opinions.
M`KEAN, Chief Justice:
The question arising on the case stated for our opinion, is, whether a feme covert, seized of a real estate in fee, can, in consequence of a power contained in articles, executed between the husband and her before their marriage (the legal estate not having been conveyed to trustees) give away such estate by will, or any instrument in nature of a will, during the coverture?
The articles of the 29th of June, 1774, are therein called a deed tripartite, and the name of James Wallace is introduced into them as a party, along with Margaret Irwin and Matthew Henderson; and they are executed by all three; but no estate is thereby conveyed to James Wallace, as a trustee, or otherwise. Margaret Henderson, during her marriage with Matthew Henderson, makes a disposition by an instrument, in nature of a will, dated January 29th 1790, of all her estate real and personal.
It is very clear, that a feme covert, by virtue of an agreement between her and her husband, before marriage, may dispose of her personal estate by will, or testament; because it is to take effect during the life of the husband; for, if he survived her, he would be intitled to the whole, and, therefore, he alone could be affected by it. 2 Vezey. 191. Peacock and Monk.
It is also clear, that a married woman cannot devise her real estate. By the statute of the 34 and 35, Hen. 8 sec. 14. it is expressly enacted, "that wills made of any manors, lands, tenements, or other hereditaments, by any woman covert, shall not be taken to be good or effectual in law."
It is further agreed, that if the legal estate in the lands had been vested by the deed, or articles, in James Wallace, the appointment by Margaret Henderson, would be valid and good in equity: For, then she would have had only an equitable interest; *202 a confidence would have been reposed in the trustee, that he would make such estates as she should direct; and her will would have amounted to a direction, which bound his conscience, and which a Court of Chancery would enforce. 2 Vezey. 192. 6 Bro. Par. Ca. 156. Powell Contr. 67, &c.
But in this case, Margaret Irwin, or Henderson, was the donor, and also the donee of the power; and it is contended, that she could not execute it during her coverture, because the fee still remained in herself, and she was restrained by the statute of Hen. 8. from making a will; and by the maxims and rules of the law she is disabled, as having no will of her own.
The instrument of 1790, executed by Margaret Henderson, being then covert, is not strictly a will, but distinct from it, though in nature of a will. It takes its effect out of the articles or deed of 1774, which created the power to make such an instrument, and was made in execution of such power. She takes notice in the preamble of it, that she was a married woman, and that, as to what she was legally intitled to dispose of, her will was as therein mentioned. It is usually called an appointment. A feme covert can execute an appointment over her own estate. Powell on Powers 34. 3 Atk. 712. The reason or ground of a wife's being disabled to make a will, is, from her being under the power of the husband, not from want of judgment, as in the case of an infant, or idiot.
Matthew Henderson and his wife, before their marriage, agreed that her real estate should remain her property, and might be disposed of by will and testament, in writing, by her, as she should think fit, as absolutely as if the marriage had never been solemnized. The intention of the parties is plain, and admits of no doubt. She has accordingly disposed of it by an instrument, in nature of a will and testament, in execution of the power, and by the express consent of the husband, not to him, or his relations, but amongst her own nearest of kin. No fraud, force, flattery, or improper use of the power he had over her, as a husband, has been exerted, nor is it alledged. This will bar him from any title to her estate, and why should it not bar the heir at law, in equity and reason? Here was a fair and lawful agreement between them, founded on a valuable and meritorious consideration. Mrs. Henderson, with her husband, could during the coverture have given away her real estate by fine, or deed (if she had been secretly examined, agreeably to the act of Assembly of Pennsylvania) conformably to their agreement; and if he had refused to join with her, a Court of Equity (if such a Court had existed here) would, on her application, have compelled him to carry their agreement into execution. It is a lamentable truth, that there is no Court cloathed with Chancery powers, in Pennsylvania; but Equity is part of our law, and it has been frequently *203 determined in the Supreme Court, that the Judges will, to effectuate the intention of the parties, consider that as executed, which ought to have been done. This is also a rule in the Court of Chancery in England. Why may not her articles of agreement, or deed, of 1774, be considered as a covenant, to stand seized of her real estate for the uses therein specially mentioned, and also to the use of her will, or appointment? Marriage, which tends to join the blood, is one of the considerations held sufficient to validate such a conveyance. Why should she not have a right in Equity, of disposing of her lands as incident to her ownership; for, she is to be taken, as to the execution of this power, to be a feme sole? If the intention of the parties cannot take place by this deed and appointment, in the common way of their operation, they may be considered good in some other way: The substance, and not the form, ought principally to be regarded. Why may not this case be considered, under all circumstances, of equal operation as a deed executed by the husband and wife, in her life time, to the use of the persons named in the appointment? The Court of Chancery will supply forms, where there is a meritorious consideration; it has gone as great lengths as is desired in the present case; and I am glad to find the last cited case determined there to be in point, "that there is no difference between a legal and equitable interest." Ambler 565. Rippen v. Dawdin, or Hardin, by Ld. Chancellor Camden, in 1769. The spirit of the case of Wright v. Ld. Cadogan, et al. 6 Brown. Par. Ca. 156. also implies this doctrine.
From all the circumstances of this case, taken together, I am of opinion, that the appointment of Margaret Henderson, passes this estate in Equity, and that judgment be given for the defendant.
SHIPPEN, Justice.
I concur in the opinion delivered by the CHIEF JUSTICE. I confess, however, that I had considerable doubts when the case was argued; but, Powell's new edition of Wood's Conveyance, 467. 8, has removed them. Powell, the editor, states the doctrine to be now settled in England, according to the case of Rippen v. Hawdin. If so settled there, it certainly should be so settled here, where the alienation of real estate is much more favored.
YEATES, Justice.
If we sat merely as a Court of Law, I should be clearly in favor of the plaintiff. But, the Chancery maxim, to consider what ought to be done, as actually done, applies strongly to our judicial situation, having no Court of Equity to enforce the performance of contracts.
As to the right of a feme covert, under articles of agreement to devise, Ld. Kenyon, says, "what was once doubted is no longer so." The principles of Rippen v. Hawdin, are in some degree *204 impugned by the case of Hodesdon v. Lloyd: But, Rippen v. Hawdin, now appears to be settled, since Powell, who, in his treatise on contracts, adds a quere to his account of the case, now states it as established. Since the statute of 27 Hen. 8. c. 10, I cannot fee that solid distinction between a trust, and a legal estate, which would warrant us to draw a line on the present occasion. 2 Bl. C. 233. 327.
BRADFORD, Justice.
The legal estate is vested in the plaintiff. The defendants set up an equitable defence, relying on the articles, the consideration of those articles, and the devise in pursuance of them. As a will, the instrument is clearly void; but the question is not as to the formality of an appointment, but the creation of a power.
The articles do not create a trust, nor expressly raise a power; but, articles executory may, I think, create a power over real estate.
As to Equity, the Court has only a borrowed jurisdiction, from the want of a Court of Chancery; yet I think the Constitution warrants our assuming it, from the expressions it employs. What is equitable, must, therefore, be adopted here; but it must be clearly settled to be so.
It has been urged, that the devisees are no nearer to the disposing party, than the plaintiff; the devisee is neither wife, child, nor creditor; and, that Chancery will not interfere, except where conscience ought to oblige the party to give up a legal advantage. Upon this point Wright. v. Cadogan, is distinguished from Bramhall v. Hall, and in Compton v. Collinson, the distinction is adverted to: But, as I have already observed, the question is, as to the creation of the power; and that there was a sufficient consideration for creating it, in this case, cannot be doubted; for marriage has always been decreed to be sufficient.
Then we are led to ask, are these articles executory? Did the husband engage to do any thing to carry them into effect? In Wright v. Cadogan, the future husband covenanted to execute such deed as counsel should advise. It is not clearly stated in Rippin v. Hawdin, whether the husband was, or was not, to do any act. In the case before us, he undertakes to do nothing; he only assents to his wife's making a will. The ultimate question thereupon is, does this assent, by removing that power which marriage legally vests in him, over his wife's acts, confer upon her the power which by the articles she meant to reserve? And as the covenant is anterior, and in consideration of the marriage, I am of opinion that it does, and concur with my brethren in giving
Judgment for the defendants.